# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Margaret Gawarecki and Anthony Brown, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ATM Network, Inc.,<br><br>Defendant. | Case No. 11-cv-1923 (SRN/JJG)<br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

Thomas J. Lyons, Sr., Lyons Law Firm, P.A., 367 Commerce Court, Vadnais Heights, Minnesota 55127; Thomas J. Lyons, Jr., Consumer Justice Center, P.A., 367 Commerce Court, Vadnais Heights, Minnesota 55127; and Curtis P. Zaun, 800 LaSalle Avenue, Suite 2150, Minneapolis, Minnesota 55402, for Plaintiffs.

David E. Krause and James B. Hovland, Krause & Hovland, Chartered, 310 Groveland Avenue, Minneapolis, Minnesota 55403, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter is before the Court on Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, Failure to State a Claim [Doc. No. 59], and Plaintiffs' Motion for Class Certification [Doc. No. 64].  For the reasons set forth below, the Court denies Defendant's Motion and grants Plaintiffs' Motion.

## II.    BACKGROUND

Plaintiffs Margaret Gawarecki and Anthony Brown are Minnesota residents.  (Am. Compl. [Doc. No. 2] ¶¶ 3–4.)  According to Plaintiffs, Defendant ATM Network, Inc. is a

Minnesota corporation that sells, leases, installs, maintains, and operates automated teller machines ("ATMs") and, at all times relevant to this action, operated the ATM located at Seven restaurant, 700 Hennepin Avenue, Minneapolis, Minnesota 55403 ("Defendant's ATM" or "the ATM").[1]  (See id. ¶¶ 1, 5.)

Plaintiffs allege that they each were illegally charged a transaction fee for using Defendant's ATM.  (Id. ¶ 1.)  According to the Amended Complaint, Plaintiff Gawarecki used the ATM on December 22, 2010, and was charged a three-dollar fee for withdrawing money.  (Id. ¶ 10.)  She alleges that there was no prominently-posted notice on the ATM that disclosed that users would be charged a fee.  (Id. ¶ 12.)  Similarly, Plaintiff Brown alleges that he was charged a three-dollar fee for withdrawing money from Defendant's ATM on July 1, 2011, and that there was no notice of the fee posted in a prominent location on the ATM.  (Id. ¶¶ 13–16.)

Plaintiffs filed an Amended Complaint on August 10, 2011,[2] asserting one count against Defendant under the Electronic Fund Transfer Act, 15 U.S.C. § 1693, et seq. ("EFTA") for failing to comply with the EFTA's notice requirements and thereby imposing an illegal fee on Plaintiffs for using the ATM.  (See id. ¶¶ 27–31.)  They allege that the Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, and they seek to represent a class of persons who also were allegedly charged an illegal fee by Defendant. (See id. ¶¶ 1–2, 18–25.)  Plaintiffs request statutory damages, attorneys' fees, and costs.  (Id.

---

[1]     Defendant's corporate name has been changed to "I LOVE YOU ATM SERVICES, INC."  (Def.'s Mem. in Supp. of Mot. to Dismiss [Doc. No. 61] at 1 n.1.)

[2]     Plaintiffs originally filed this action on July 14, 2011 [Doc. No. 1].

at 7–8.)  They have waived their claim for actual damages.  (Pls.' Mem. of Law in Supp.

of Mot. for Class Cert. [Doc. No. 66] ("Pls.' Class Cert. Mem.") at 2 n.1.)

Plaintiffs filed their first motion for class certification on March 1, 2012 [Doc. No.

11], and Defendant filed its first motion to dismiss on August 23, 2012 [Doc. No. 40].  In its

motion, Defendant argued that Plaintiffs suffered no injury in fact and, therefore, lacked

standing to pursue their claim under the EFTA.  (Order dated Oct. 11, 2012 [Doc. No. 49]

("Oct. 11 Order") at 1.)  Because the same argument had been accepted by the U.S. District

Court for the District of Nebraska in Charvat v. First National Bank of Wahoo, No.

8:12CV97, 2012 WL 2016184 (D. Neb. June 4, 2012), and then appealed by the plaintiff in

that case to the Eighth Circuit, this Court stayed all proceedings in this matter pending the

Eighth Circuit's ruling.  (See Oct. 11 Order at 1–2.)  Accordingly, the Court denied the

parties' pending motions without prejudice.  (Id. at 2–3.)  In November 2013, after the

Eighth Circuit issued its opinion (in which it found that the plaintiff did have standing),[3] this

Court lifted the stay and directed the parties to re-file their respective motions [Doc. No.

58].

## III.    DEFENDANT'S MOTION TO DISMISS

Defendant now moves to dismiss Plaintiffs' Amended Complaint, pursuant to Rules

12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for lack of subject matter

jurisdiction or failure to state a claim upon which relief may be granted.  When evaluating a

motion to dismiss under Rule 12(b)(1), the Court must first "distinguish between a 'facial

---

[3]      Charvat v. Mut. First Fed. Credit Union, 725 F.3d 819 (8th Cir. 2013).

attack' and a 'factual attack.'" <u>Osborn v. United States</u>, 918 F.2d 724, 729 n.6 (8th Cir. 1990). If the movant presents only a facial attack, the Court must "restrict[] itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." <u>Id.</u> (citations omitted). "Dismissal for lack of subject matter jurisdiction will not be granted lightly," but it will be found proper "when a facial attack on a complaint's alleged basis for subject matter jurisdiction shows there is no basis for jurisdiction." <u>Wheeler v. St. Louis Sw. Ry. Co.</u>, 90 F.3d 327, 329 (8th Cir. 1996) (citation omitted).

When evaluating a motion to dismiss under Rule 12(b)(6), the court assumes the facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the plaintiff. <u>Morton v. Becker</u>, 793 F.2d 185, 187 (8th Cir. 1986). However, the court need not accept as true wholly conclusory allegations, <u>see Hanten v. Sch. Dist. of Riverview Gardens</u>, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions the plaintiff draws from the facts pled, <u>Westcott v. City of Omaha</u>, 901 F.2d 1486, 1488 (8th Cir. 1990). In addition, the court ordinarily does not consider matters outside the pleadings on a motion to dismiss. <u>See</u> Fed. R. Civ. P. 12(d).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." <u>Id.</u> at 555. "Threadbare recitals of the elements of a cause of action, supported by mere

4

conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Twombly, 550 U.S. at 556.

Defendant seeks dismissal of Plaintiffs' Amended Complaint under Rules 12(b)(1) and 12(b)(6) on the same grounds—i.e., that the federal statutory provision upon which Plaintiffs' claim is based has been repealed, thereby depriving the Court of federal question subject matter jurisdiction and Plaintiffs of a claim upon which relief can be granted. (Def.'s Mem. in Supp. of Mot. to Dismiss [Doc. No. 61] ("Def.'s Mem.") at 1, 7–8.) Because Defendant presents only a facial attack on the Court's subject matter jurisdiction, both bases for Defendant's motion—12(b)(1) and 12(b)(6)—are governed by the same standard, and the Court will analyze Defendant's arguments accordingly.

When the events giving rise to this lawsuit occurred, EFTA's notice provision stated the following:

(3)  Fee disclosures at automated teller machines

(A)  In general

The regulations prescribed under paragraph (1) shall require any automated teller machine operator who imposes a fee on any consumer for providing host transfer services to such consumer to provide notice in accordance with subparagraph (B) to the consumer (at the time the service is provided) of—

(i)  the fact that a fee is imposed by such operator for providing the service; and

(ii)  the amount of any such fee.

(B)  Notice requirements

(i)  On the machine

The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.

(ii)  On the screen

The notice required under clauses (i) and (ii) of subparagraph (A) with respect to any fee described in such subparagraph shall appear on the screen of the automated teller machine, or on a paper notice issued from such machine, after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction . . . .

15 U.S.C. § 1693b(d)(3)(A)-(B), amended by Act of Dec. 20, 2012, Pub. L. No. 112-216, sec. 1, 126 Stat. 1590.  A failure to comply with this provision resulted in liability to the consumer in the form of actual damages and, "in the case of an individual action, an amount not less than $100 nor greater than $1,000." Id. § 1693m(a)(1)-(2)(A).  In the case of a class action, there is no minimum liability as to each class member, and liability to the class is capped at the lesser of $500,000 or 1 percent of the defendant's net worth.  Id. § 1693m(a)(2)(B).  In a successful action, the plaintiff is also entitled to costs and a reasonable attorney's fee.  Id. § 1693m(a)(3).

On December 20, 2012—after this lawsuit was filed, and while the proceedings were stayed pending the Eighth Circuit's ruling in Charvat—the notice provision was revised to state:

(3)  Fee disclosures at automated teller machines

    (A)  In general

    The regulations prescribed under paragraph (1) shall require any automated teller machine operator who imposes a fee on any consumer for providing host transfer services to such consumer to provide notice in accordance with subparagraph (B) to the consumer (at the time the service is provided) of—

        (i)  the fact that a fee is imposed by such operator for providing the service; and

        (ii)  the amount of any such fee.

    (B)  Notice requirement

    The notice required under clauses (i) and (ii) of subparagraph (A) with respect to any fee described in such subparagraph shall appear on the screen of the automated teller machine, or on a paper notice issued from such machine, after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction.

15 U.S.C. § 1693b(d)(3).  The congressional enactment instituting this change does not state that it is to apply retroactively.  See Act of Dec. 20, 2012, Pub. L. No. 112-216, sec. 1, 126 Stat. 1590.  Even so, Defendant argues that the new language should apply to Plaintiffs' claim because a law that abolishes a penalty is effective upon enactment, Plaintiffs had no vested right in their claim, and the legislative intent in enacting the change was to preclude cases such as this.  (Def.'s Mem. at 11.)

    "Retroactivity is not favored in the law."  Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988).  Thus, when considering whether a statutory provision applies retroactively, a court:

> must determine first whether the statute evinces any clear expression of congressional intent on the application of the statute to cases arising before its enactment. . . . If [the court] cannot find any clear congressional intent, [it] must consider whether the new statute would have a true retroactive effect, i.e., "whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." If [the court] find[s] that the statute would have a true retroactive effect, the "traditional presumption teaches that it does not govern" in cases that arose before the statute became effective.

Maitland v. Univ. of Minn., 43 F.3d 357, 361 (8th Cir. 1994) (quoting Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994)) (internal citations omitted). Here, as Defendant concedes, the legislation enacting the new EFTA notice provision does not expressly state that it applies to cases that arose prior to its enactment. (See Def.'s Mem. at 15.) Therefore, the Court must consider whether the new provision would have a "true retroactive effect" if applied to Plaintiffs' claim.

There are two main cases upon which this Court will rely for guidance. In the first case, Charvat v. Mutual First Federal Credit Union, the Eighth Circuit analyzed whether a plaintiff who alleged a violation of the EFTA had standing to bring his claim. 725 F.3d 819, 821 (8th Cir. 2013). The ATM transactions upon which the plaintiff's claim was based occurred in "early 2012." Id. The plaintiff alleged that he received an on-screen notice of the transaction fee, but that there was no on-machine notice. Id. While the question of retroactive application of the new EFTA notice provision was not before the court, the court did implicitly address the issue at multiple points in its August 2013 opinion:

> . . . At the time [the plaintiff] completed the transactions, the EFTA required ATM operators to provide two forms of notice, one "on or at" the ATM ("on machine" notice) and another on-screen during the transaction, if operators charged a transaction fee. See § 1693b(d)(3)(B)(i)-(ii), amended by Act of

Dec. 20, 2012, Pub. L. No. 112-216, 126 Stat. 1590 (removing the "on machine" notice requirement). . . .

. . .

. . . As noted above, when [the plaintiff] conducted his ATM transactions, the EFTA required notice of fees both on the ATM and also on the screen.  See § 1693b(d)(3)(B)(i)-(ii), amended by Act of Dec. 20, 2012, Pub. L. No. 112-216, 126 Stat. 1590. . . .

. . .

. . . At the time of [the plaintiff's] transactions, the EFTA created a right to a particular form of notice before an ATM transaction fee could be levied.  If that notice was not provided and a fee was nonetheless charged, an injury occurred, and the statutory damages are directly related to the consumer's injury. . . .

Id. at 821, 822, 824.  Thus, in holding that the plaintiff had standing to pursue his claim, the Eighth Circuit implied that the new EFTA provision does not apply to claims that are based on conduct that occurred prior to the change in the law.[4]

In the second case, Brown v. Wells Fargo & Co., another judge within this District analyzed the exact question at issue in the present matter.[5]  Civ. No. 11-1362 (JRT/JJG),

---

[4]      The Seventh Circuit made a similar implication in Hughes v. Kore of Indiana Enterprise, Inc., 731 F.3d 672 (7th Cir. 2013).  In that case, the plaintiff also alleged that there was an on-screen, but not an on-machine, notice when he conducted the ATM transactions at issue.  Id. at 674.  The court noted that the EFTA required both an on-screen notice and an on-machine notice at the time of the alleged violations, but that the EFTA had since been amended.  Id.  Although the issue of retroactive application was not before the court, it did state that "[t]he sticker requirement is no more; but a judgment would remind [the defendants] to take greater care in the future to comply with federal law, however irksome compliance may seem."  Id. at 678.  The court then remanded the case for further proceedings consistent with its order reversing the district court's decertification of the class.  Id.

[5]      The plaintiff in that case, Brown, is also one of the named Plaintiffs in the present matter.

2013 WL 6851068 (D. Minn. Dec. 30, 2013).  After determining that the EFTA provides no

explicit direction from Congress, the court noted that there is precedent both declining to

apply the new provision retroactively, id. at *4 & n.3 (citing Pike v. Nick's English Hut,

Inc., 937 F. Supp. 2d 956 (S.D. Ind. 2013)), and refusing to apply the presumption against

retroactivity, id. at *4 & n.4 (citing Mabary v. Hometown Bank, N.A., Civ. No. 4:10-3936,

2013 WL 1124026 (S.D. Tex. Mar. 18, 2013)).  The court ultimately relied on Charvat in

concluding that the plaintiff had a vested right to a particular type of notice.  Id. at *4 (citing

Charvat, 725 F.3d at 824).  According to the court:

> The lack of such notice provided [the plaintiff] with a right to pursue a claim
> under the EFTA, as it existed at the time of his transaction.  Applying the
> amended statute to the conduct at issue would, therefore, have a "true"
> retroactive effect.
>
> Because the changes to the statute changed [the plaintiff's] right to receive
> notice and pursue a claim for a violation of the EFTA, the amendment altered
> the legal consequences of failing to provide adequate on-machine notice.  See
> Maitland, 43 F.3d at 362.  Congress was fully capable of making the statute
> retroactive through an explicit statement and did not.  This Court, therefore,
> finds that the strong presumption against retroactivity is not overcome . . . .

Id.  Thus, the court concluded that the pre-amendment version of the EFTA notice provision

applied to the plaintiff's claim.  Id. at *1; see also Pike, 937 F. Supp. 2d at 960 ("Based

upon the lack of explicit congressional direction that the changes to the EFTA apply

retroactively, the fact that the law disfavors retroactive applicability of statutory law, and

[the plaintiff's] vested right to pursue a claim for violation of the EFTA, the Court finds that

15 U.S.C. § 1693b, as existing at the time of the alleged violation(s), is applicable to [the

plaintiff's] claims."); Gonzalez v. Investors Bank, Civ. Action No. 2:12-cv-04084

(DMC)(JBC), 2013 WL 5730528, at *5 (D.N.J. Oct. 21, 2013) (finding that the EFTA

amendment "ha[s] a retroactive effect and should not be applied to cases pending at the time

of its enactment" because it eliminated the plaintiffs' cause of action).

This Court agrees with the reasoning and outcome in <u>Brown</u>.  First, the EFTA does

not evince any clear expression of congressional intent that the new notice provision applies

to cases arising before its enactment.  While Congress had the ability to expressly state that

the new notice provision applies retroactively, it did not do so.  Defendant points to

statements within congressional committee reports and by members of Congress that

elimination of the on-machine notice provision would protect institutions from frivolous

lawsuits, (<u>see</u> Def.'s Mem. at 15–16), but such statements are insufficient to demonstrate an

express intent that the new language should apply retroactively.  Not only are they

ambiguous as to timing, but "Congress's authoritative statement is the statutory text, not the

legislative history."  <u>Chamber of Commerce of U.S. v. Whiting</u>, 131 S. Ct. 1968, 1980

(2011) (citation and internal quotation marks omitted).

Second, Plaintiffs already had a vested right in their EFTA claim when the on-

machine notice provision was eliminated.  While Defendant relies on the district court's

holding in <u>Mabary v. Hometown Bank, N.A.</u>, 2013 WL 1124026, at *3, that the plaintiff did

not have a vested right in an EFTA claim that arose prior to the change in the notice

provision, (<u>see</u> Def.'s Mem. at 14–15), the Eighth Circuit explicitly stated in <u>Charvat</u> that a

plaintiff does have such a right and that it arises at the time of the plaintiff's transactions.

Therefore, the new notice provision would have a true retroactive effect in this case because

it would impair rights that Plaintiffs possessed when they acted.  Accordingly, the traditional presumption—i.e., that the new language does not govern in cases that arose before the statute became effective—applies.

Finally, Defendant's characterization of the new language as a "repeal" that "abolished a penalty," rather than as an "amendment," does not change the outcome.  (See Def.'s Mem. at 11.)  Defendant contends that statutory damages are a penalty and that the repeal, prior to final judgment, of a statute creating a penalty immediately eliminates the right to recovery.  (See id. at 11–12.)  Therefore, Defendant argues, the relief Plaintiffs seek is unavailable.  (Id. at 12.)  Defendant relies primarily upon Penpower Technology Ltd. v. S.P.C. Technology (a district court case out of the Ninth Circuit) and several nineteenth-century Supreme Court cases.  (See id.; Def.'s Reply Mem. in Supp. of Mot. to Dismiss [Doc. No. 76] at 3.)

It is true that, "at common law . . . statutes that merely removed a burden on private rights by repealing a penal provision (whether criminal or civil) . . . were understood to preclude punishment for acts antedating the repeal."  Landgraf, 511 U.S. at 271 (citations omitted).  However, in 1994, the Supreme Court in Landgraf v. USI Film Products noted that the general federal savings statute repealed that common law rule.  Id.  That statute provides:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability. . . .

1 U.S.C. § 109.  Moreover, as Plaintiffs point out, the district court in <u>Penpower</u>

<u>Technology Ltd.</u> was applying California law when discussing the effect of the repeal of a

California statute.  (Pls.' Mem. in Opp. to Def.'s Mot. to Dismiss [Doc. No. 71] at 9 (citing

<u>Penpower Tech. Ltd. v. S.P.C. Tech.</u>, 627 F. Supp. 2d 1083, 1090 (N.D. Cal. 2008)).

Therefore, Defendant has not demonstrated that characterizing the elimination of the on-

machine notice provision as a repeal leads to a result different than that reached by applying

the Supreme Court's "retroactivity test" from <u>Landgraf</u>.  Accordingly, the Court finds that

the pre-amendment version of the EFTA notice requirement applies to Plaintiffs' claim, and

Defendant's motion to dismiss is denied.

## IV.    PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

As discussed above, Plaintiffs bring their claim pursuant to the EFTA.  The EFTA

specifically contemplates that recovery may be sought through a class action, <u>see</u> 15

U.S.C. § 1693m(a), and Plaintiffs propose certification of the following class:

> All persons who were assessed a fee for using Defendant's ATM located on
> the first (ground) floor of 700 Hennepin Avenue, Minneapolis, Minnesota
> 55403 between July 14, 2010 and July 14, 2011.

(Pls.' Class Cert. Mem. at 3.)  Plaintiffs request that the Court appoint them as class

representatives and their counsel as class counsel.  (<u>See</u> <u>id.</u> at 2–3, 11–12.)

The Court has broad discretion in determining whether class certification is

appropriate, and "[t]his discretion extends to defining the scope of the class."  <u>Shapiro v.</u>

<u>Midwest Rubber Reclaiming Co.</u>, 626 F.2d 63, 71 (8th Cir. 1980) (citations omitted).

"To be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) [of

the Federal Rules of Civil Procedure] and must satisfy one of three subsections of Rule

23(b)."  In re St. Jude Med., Inc., 425 F.3d 1116, 1119 (8th Cir. 2005) (citations omitted).

The U.S. Supreme Court has recognized that:

> sometimes it may be necessary for the court to probe behind the pleadings
> before coming to rest on the certification question, and that certification is
> proper only if the trial court is satisfied, after a rigorous analysis, that the
> prerequisites of Rule 23(a) have been satisfied. Frequently that "rigorous
> analysis" will entail some overlap with the merits of the plaintiff's
> underlying claim. . . .

Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (internal quotation marks
and citations omitted).

In this case, Plaintiffs argue that each of the Rule 23(a) requirements, as well as
Rule 23(b)(3), is satisfied.[6]  In opposition, Defendant argues that none of these elements
is satisfied, in part because Plaintiffs have waived their claim for actual damages.
Because Defendant raises this argument in regard to each of the Rule 23 requirements,
the Court will address it first.

### A.      Waiver

As noted above, Plaintiffs have abandoned their claim for actual damages.  (Pls.'
Class Cert. Mem. at 2 n.1.)  They now seek certification only of a statutory damages
class.  (Id.)  Defendant, however, contends that Plaintiffs do not have the authority to
waive a claim for actual damages on behalf of the entire class, citing to the Supreme
Court's decision in Standard Fire Insurance Co. v. Knowles, 133 S. Ct. 1345 (2013).
(See Def.'s Mem. in Opp. to Pls.' Mot. for Class Cert. [Doc. No. 73] ("Def.'s Class Cert.

---

[6]      In their Amended Complaint, Plaintiffs state that they seek class certification
under Rule 23(b)(2) or 23(b)(3).  (Am Compl. ¶ 18.)  However, Plaintiffs' motion and
briefing only request certification under Rule 23(b)(3).

14

Opp.") at 7–9.)  In order to avoid federal jurisdiction, the class-action plaintiff in that case

stipulated, prior to certification of the class, that the class would not seek damages in

excess of a certain dollar amount.  Standard Fire Ins., 133 S. Ct. at 1347.  The Court

determined that the stipulation was binding only as to the plaintiff, "because a plaintiff

who files a proposed class action cannot legally bind members of the proposed class

before the class is certified."  Id. at 1349 (citations omitted).

Defendant is correct that Plaintiffs cannot waive the actual damages claims of the

putative class members.  Like the named plaintiff in Standard Fire Insurance, Plaintiffs

here have attempted to limit the putative class members' rights to damages prior to class

certification.  According to the Supreme Court, such a waiver is not valid.  That being

said, the waiver issue is purely academic in this case because Defendant has submitted

uncontroverted evidence demonstrating that no putative class member could have

suffered actual damages.  The parties agree that, in order to prove actual damages under

the EFTA, a plaintiff must demonstrate his or her detrimental reliance on the lack of

notice.  (See Def.'s Class Cert. Opp. at 16; Pls.' Reply Mem. in Supp. of Mot. for Class

Cert. [Doc. No. 77] ("Pls.' Reply") at 7–8 & n.4.)  Here, Defendant's General Manager

submitted a declaration in which he states that, at all times relevant to this lawsuit, the

ATM was programmed to present an on-screen fee notice and that, "[u]nless the user

affirmatively agrees to pay the fee on the screen, the ATM will not complete the

transaction or charge the user a fee."  (Decl. of Kurt Duhn [Doc. No. 19] ("Duhn Decl.")

¶ 8.)  As Plaintiffs argue:  "Defendant cannot swear that every consumer affirmatively

accepted the fee and then backtrack and say that some consumers may have actual

15

damages claims.  This case yields statutory damages only . . . ."  (Pls.' Reply at 8.)

Therefore, the waiver issue is moot, and Plaintiffs may seek certification of a statutory-

damages only class.[7]

> **B.     Rule 23(a)**
>
> Under Rule 23(a):
>
> One or more members of a class may sue or be sued as representative
> parties on behalf of all members only if:
>
> > (1)     the class is so numerous that joinder of all members is impracticable;
> >
> > (2)     there are questions of law or fact common to the class;
> >
> > (3)     the claims or defenses of the representative parties are typical of the
> > claims or defenses of the class; and
> >
> > (4)     the representative parties will fairly and adequately protect the
> > interests of the class.

Fed. R. Civ. P. 23(a).  A trial court must engage in "a rigorous analysis" to ensure that

these prerequisites are met.  <u>Dukes</u>, 131 S. Ct. at 2551 (internal quotation marks and

citation omitted).

> **1.     Numerosity**

Plaintiffs first argue that they have satisfied the numerosity requirement under

Rule 23(a).  There are a number of relevant factors pertaining to this inquiry.  <u>Paxton v.

Union Nat'l Bank</u>, 688 F.2d 552, 559 (8th Cir. 1982).  The most obvious factor is the size

---

[7]     The Court notes that many district courts—while not addressing the waiver
issue—have certified statutory-damages only classes.  <u>See, e.g.</u>, <u>Hooks v. Landmark
Indus., Inc.</u>, Civ. Action No. H-12-173, 2013 WL 3937029 (S.D. Tex. July 30, 2013);
<u>Frey v. First Nat'l Bank Sw.</u>, Civ. Action No. 3:11-CV-3093-N, 2013 U.S. Dist. LEXIS
37153 (N.D. Tex. Feb. 20, 2013); <u>Hart v. Guardian Credit Union</u>, Civ. Action No.

of the proposed class; however, "[n]o arbitrary rules regarding the necessary size of

classes have been established." Id. (citation omitted).  "In addition . . . , the court may

also consider the nature of the action, the size of the individual claims, the inconvenience

of trying individual suits, and any other factor relevant to the practicability of joining all

the putative class members." Id. at 559–60 (citation omitted).

Plaintiffs argue that numerosity is satisfied because Defendant collected an

unlawful fee in approximately 2,630 transactions at its ATM during the proposed class

period and, based on Defendant's records, at least forty-one distinct card numbers were

used.[8]  (Pls.' Class Cert. Mem. at 4; Pls.' Reply at 3–4.)  Defendant does not dispute that

2,630 transactions occurred during the proposed class period.  Rather, Defendant argues

that:  (1) Plaintiffs have not provided a reliable estimate of the size of the class, and

(2) the putative class members are not readily identifiable.  (See Def.'s Class Cert. Opp.

at 12–14.)  Specifically, Defendant argues that the number of transactions does not

necessarily equal the number of putative class members because multiple transactions

may have been conducted by the same individual and because not all individuals are

---

2:10cv855-WHA, 2011 WL 2434201 (M.D. Ala. June 16, 2011).

[8]    Plaintiffs actually argue that the class consists of considerably more than forty-one
members.  They assert that, from December 22 through December 31, 2010, there were
fifty-three transactions at Defendant's ATM.  (Pls.' Reply at 3.)  Of those fifty-three
transactions, forty-two were charged a fee.  (Id. at 3.)  And, of the forty-two fee
transactions, forty-one distinct card numbers were used.  (Id. at 3–4.)  Based on that
sample, Plaintiffs argue, "the class easily numbers in the thousands of persons."  (Id. at
4.)  The Court's review of the documents submitted shows fifty-four transactions, forty-
three fees charged, and forty-one distinct card numbers used.  (See Supplemental Decl. of
Thomas J. Lyons [Doc. No. 78] ¶ 3 & Ex. 1 (filed under seal).)  For purposes of this
discussion, the slight difference in the numbers is irrelevant.

"consumers" under the EFTA, and the individuals who used the ATM during the class

period when there was a fee sticker on the ATM have no claim.[9]  (See id. at 12–13.)

The Court finds that numerosity is satisfied in this case.  First, Plaintiffs have

provided a reliable estimate of the size of the class based on the information available to

them.  Plaintiffs note that, "in order for there to be less than 40 class members, each

member of the class would have had to use the offending ATM an average of 66 times

during the proposed class period."  (Pls.' Reply at 2.)  The Court finds the likelihood of

that many individuals engaging in that number of transactions at one ATM during the

course of one year to be too slim to invalidate class certification.  See Caroline C. By and

Through Carter v. Johnson, 174 F.R.D. 452, 462 (D. Neb. 1996) (citation and internal

quotation marks omitted) ("In assessing impracticability the court should exercise

common sense . . . .").  Moreover, while the statute applies to "consumer" transactions,

rather than business transactions, that issue is more appropriately addressed under Rule

23(b)(3).  To the extent that the distinction is relevant here, the Court finds that the

likelihood that the number of business transactions conducted during the proposed class

period is so great as to render class certification improper is very low.  Finally, except to

the extent that Plaintiffs concede that Defendant applied a new fee sticker to the ATM on

---

[9]      Defendant also argues that the class must be limited to individuals who have
waived their actual damages claim.  (Def.'s Class Cert. Opp. at 12.)  As discussed above,
Defendant has demonstrated that there are no individuals who will have an actual
damages claim in this case.  Accordingly, this consideration has no bearing on the size of
the class.

July 8, 2011,[10] the parties' disputes over whether there was an on-machine notice on the

ATM during the proposed class period cannot properly be resolved on the record before

the Court at this stage of the litigation.   Plaintiffs have alleged that Defendant failed to

comply with the on-machine notice provision during the proposed class period, and

should Plaintiffs be unable to prove their claim, the Court may amend the class definition

at a later date.   See In re Zurn Pex Plumbing Prods., 644 F.3d 604, 617 (8th Cir. 2011)

(citations omitted) ("If, at a later date, the court were to conclude that the [plaintiffs']

claims are indeed barred . . . , it may decertify the class or amend the class definition, or

grant summary judgment to [the defendant] on such claims under Rule 56."); Fed. R. Civ.

P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or

amended before final judgment.").

Second, although Defendant argues that the difficulty of identifying class

members is relevant to the issue of numerosity, the case Defendant relies upon for that

---

[10]     According to Defendant's General Manager, a new fee sticker was applied on
Defendant's ATM on July 8, 2011, by Defendant's own personnel.  (Duhn Decl. ¶ 10.)
Plaintiffs do not attempt to refute this testimony, instead stating:

> Defendant concedes that there was no on-machine notice on July 8, 2011,
> when Defendant claims to have "re-applied" the on-machine notice.
> Absent any evidence that the on-machine notice was present, or affixed and
> then removed, between December 22, 2010 and July 8, 2011, Plaintiffs are,
> at a minimum, well on their way to convincing a jury on a more likely than
> not basis that Defendant failed in its notice obligations during that period.
> Each consumer who was charged a fee during that period, as reflected in
> Defendant's records, will have a right of recovery against Defendant.

(Pls.' Reply at 6 (citations omitted) (emphases added).)  The class definition will be
amended accordingly, as detailed in Part IV.D.

proposition actually supports <u>Plaintiffs'</u> position.  In <u>Rattray v. Woodbury County</u>, the court found that "[t]he numbers involved and the deficiencies in the identifications available, standing alone, <u>suggest that joinder is impracticable</u>, because . . . joinder will impose a strong litigational hardship or inconvenience on the named plaintiff."  253 F.R.D. 444, 452–53 (N.D. Iowa 2008) (emphasis added).  In any event, Defendant's concern regarding the difficulty of identifying class members is more appropriately addressed under Rule 23(b)(3).  Based on the foregoing, the Court finds that Rule 23(a)(1) is satisfied.

### 2.     Commonality

The parties also dispute whether the commonality requirement of Rule 23(a) is met.  "'Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury.'"  <u>Luiken v. Domino's Pizza, LLC</u>, 705 F.3d 370, 376 (8th Cir. 2013) (quoting <u>Dukes</u>, 131 S. Ct. at 2551).  As the Supreme Court recently explained in <u>Wal-Mart Stores, Inc. v. Dukes</u>:

> [The plaintiffs'] claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor.  That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

> "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common <u>answers</u> apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."

131 S. Ct. at 2551 (citation omitted).  In that case, the lower courts approved certification of a class of current and former female employees of Wal-Mart who alleged that their supervisors' exercise of discretion regarding pay and promotion matters discriminated against women in violation of Title VII.  Id. at 2547.  The Supreme Court found that "in resolving an individual's Title VII claim, the crux of the inquiry is 'the reason for a particular employment decision,'" and that the plaintiffs sought to sue about millions of such decisions.  Id. at 2552 (citation omitted).  According to the Court, "[w]ithout some glue holding the alleged reasons for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question why was I disfavored."  Id.  Pay and promotion decisions at Wal-Mart were, for the most part, committed to local supervisors' broad discretion, id. at 2547, and there was no proof of a companywide discriminatory policy, id. at 2556.  Thus, the Court reversed the Ninth Circuit Court of Appeals, reasoning that:

> demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's.  A party seeking to certify a nationwide class will be unable to show that all the employees' Title VII claims will in fact depend on the answers to common questions.

Id. at 2554.

The Eighth Circuit has not applied Dukes in the EFTA context, but it did recently apply the standards articulated therein in Luiken v. Domino's Pizza, LLC, a case in which Domino's Pizza delivery drivers alleged that the delivery charge customers paid to Domino's was a gratuity wrongfully withheld from them.  705 F.3d at 372.  The relevant Minnesota statute defined the term "gratuities" to include "an obligatory charge assessed

to customers, guests or patrons <u>which might reasonably be construed by the guest,</u>

<u>customer, or patron</u> as being a payment for personal services rendered by an employee."

<u>Id.</u> (citation omitted).  Because there was not a uniform context in which deliveries

occurred, the Eighth Circuit determined that how a charge is reasonably construed in one

transaction is not necessarily indicative of how it is reasonably construed in another.  <u>Id.</u>

at 376.  The court analogized the facts to those in <u>Dukes</u> and reversed the district court's

class certification order.  <u>Id.</u> at 376, 378.

Plaintiffs argue that their claims involve the same questions of law and fact as all

of the putative class members—<u>i.e.,</u> "whether Defendant charged consumers an ATM

transaction fee at a moment at which it failed to display the required fee notice."  (Pls.'

Class Cert. Mem. at 5.)  Defendant argues that the answer to this question will not be the

same for all class members because, even if there was no on-machine notice on the ATM

when the named Plaintiffs used it, the notice may have been there when other class

members used it.  (Def.'s Class Cert. Opp. at 15.)  Moreover, Defendant argues, it must

be determined whether each ATM user was a "consumer," and the other members' claims

for actual damages will involve individual questions of reliance.  (<u>Id.</u> at 15–16.)

The Court is not persuaded by Defendant's arguments.  First, as the district court

noted in <u>Hooks v. Landmark Industries, Inc.,</u> there are several questions of law and fact

that are common to all putative class members in an EFTA case:

> (1) whether, during the relevant time period, Defendant was an ATM
> operator that imposed a transaction fee on consumers for use of the ATM;
> (2) whether Defendant complied with the notice requirements of the EFTA
> during the relevant time period; and (3) whether Plaintiff and potential class

members are entitled to recover statutory damages, costs, and attorney's fees.

2013 WL 3937029, at *4; <u>see also, e.g.</u>, <u>Frey</u>, 2013 U.S. Dist. LEXIS 37153, at *11

("Every proposed class member must establish whether [the defendant] was the operator

of the ATM and whether [the defendant] may avail itself of certain statutory defenses.

Further, facts establishing the period of time, if any, the exterior notice was missing are

relevant to all proposed class members."); <u>Hart</u>, 2011 WL 2434201, at *2 ("[T]he

predominant question in this case, which is common to [the plaintiff] and all class

members, is whether [the defendant] placed EFTA-compliant notices on the two ATMs

in question.").  Moreover, as the court in <u>Hooks</u> noted, a defendant's argument that the

required notice was provided does not defeat commonality:

> Defendant argues that the court will have to conduct an individualized
> inquiry into each potential class member, as well as into Defendant's
> records, in order to determine whether each class member actually used the
> ATM in question and whether notice was provided.  The court disagrees.
> In order to become a class member, an individual must necessarily show,
> whether by affidavit or other evidence, that he used the ATM during the
> relevant time period.  Additionally, if Defendant provided notice as
> required by the EFTA, it may raise that defense throughout the
> proceedings.  An individualized inquiry by the court is not required.

2013 WL 3937029, at *4.  Should Defendant be able to prove that an on-machine notice

was posted during some or all of the class period, the class period can be amended prior

to judgment.

Second, as noted above, the other putative class members do not have claims for

actual damages, and the issue of determining whether a particular ATM user was a

"consumer" is more appropriately addressed under Rule 23(b)(3).  For these reasons, the

Court finds that Rule 23(a)(2) is satisfied.

### 3.      Typicality

Typicality is also in dispute in this case.  While the burden of demonstrating

typicality is not "onerous," a party seeking class certification must show that "the

representative is not alone in his or her dissatisfaction."  Paxton, 688 F.2d at 562 (citation

omitted).  In other words, "Rule 23(a)(3) requires a demonstration that there are other

members of the class who have the same or similar grievances as the plaintiff."  Id.

(citations and internal quotation marks omitted).  Thus, Rule 23(a)(3) "is generally

considered to be satisfied 'if the claims or defenses of the representatives and the

members of the class stem from a single event or are based on the same legal or remedial

theory.'"  Id. at 561–62 (quoting C. Wright & A. Miller, Fed. Prac. & Proc. § 1764 n.21.1

(Supp. 1982)).  This is true even if there are "[f]actual variations in the individual

claims."  Alpern v. UtiliCorp United, Inc., 84 F.3d 1525, 1540 (8th Cir. 1996) (citation

omitted).

Plaintiffs argue that typicality is satisfied because their claims are

"indistinguishable" from those of the putative class members—"[e]ach claim arises from

Defendant charging a transaction fee while failing to comply with all of its EFTA notice

obligations."  (Pls.' Class Cert. Mem. at 6.)  Defendant's sole argument regarding this

element of class certification is that Plaintiffs' claims are not typical of the putative class

members' claims because Plaintiffs have waived actual damages.  (Def.'s Class Cert.

Opp. at 16–17.)  As discussed above, Defendant's waiver argument is moot in this case

24

because no putative class members could have a claim for actual damages.  Thus,

Plaintiffs and the putative class members are seeking redress of a similar grievance (i.e.,

Defendant's alleged failure to provide an on-machine notice), under the same legal and

remedial theories (i.e., the EFTA), and Rule 23(a)(3) is satisfied.

### 4.   Adequacy of representation

The parties also dispute whether Plaintiffs are adequate class representatives.  Rule

23(a)(4) focuses on "whether the class representatives will vigorously prosecute the

interests of the class through qualified counsel" and whether "the class representatives

have common interests with the members of the class."  Paxton, 688 F.2d at 562–63

(citations omitted).  Thus, this inquiry "serves to uncover conflicts of interest between

named parties and the class they seek to represent."  Amchem Prods., Inc. v. Windsor,

521 U.S. 591, 625 (1997) (citation omitted).

Defendant raises two arguments as to the adequacy of Plaintiffs and their class

counsel to represent the putative class.  First, Defendant argues that there is a conflict of

interest between Plaintiffs and the putative class members because Plaintiffs have

abandoned their claim for actual damages and so are seeking different relief than that

available to the class.  (Def.'s Class Cert. Opp. at 18.)  Again, Defendant's waiver

argument is moot in this case because Defendant has demonstrated that no putative class

members could have a claim for actual damages.  Therefore, Plaintiffs' waiver of actual

damages does not create a conflict of interest.

Second, Defendant argues that the nature of the relationship between Plaintiffs and their counsel creates a danger of champerty.  (Id.)  Defendant points to Plaintiff Gawarecki's deposition testimony in this matter, in which she disclosed that she learned that ATMs were required to have an on-machine notice from her current counsel at a social gathering that occurred prior to her use of Defendant's ATM.  (See id. at 18–19; Decl. of David E. Krause [Doc. No. 74] ("Krause Decl."), Ex. A (Gawarecki Dep. 19:2-18, 24:4-13).)  Defendant also notes that Plaintiff Brown was a plaintiff in another fee-sticker case in this District and was represented by the same counsel.  (Def.'s Class Cert. Opp. at 19.)  According to Defendant, such relationships render a plaintiff an inadequate representative, as detailed in Martz v. PNC Bank, N.A., Civ. Action No. 06-1075, 2007 WL 2343800 (W.D. Pa. Aug. 15, 2007).  In that case, the named plaintiff and class counsel were close friends who had been roommates in college for several years, class counsel had sought out the plaintiff to act as the representative in the lawsuit, and the plaintiff was serving as the named plaintiff in a similar action brought by the same class counsel.  Id. at *4.  The court stated that "'courts fear the danger of champerty'" when the named plaintiff and class counsel have "a close personal relationship," especially in a case where attorneys' fees will "greatly exceed" the named plaintiff's recovery.  Id. at *5 (quoting London v. Wal-Mart Stores, Inc., 340 F.3d 1246, 1254 (11th Cir. 2003)).  Because the plaintiff had a close friendship with class counsel, and because he admitted that he was not certain that he was a member of the putative class, the court determined that the plaintiff was not an adequate class representative.  Id. at *5–6.

26

This Court finds that Plaintiffs' relationships with class counsel in this case are not so close as to render them inadequate representatives.  Plaintiff Gawarecki testified in her deposition that she had not met her current counsel prior to the social gathering at which he told her about fee-sticker litigation.  (Krause Decl., Ex. A (Gawarecki Dep. 24:14-16).)  Moreover, Defendant has not argued that class counsel sought out either of the named Plaintiffs to represent the class, and Defendant cites to no authority to support its argument that Plaintiff Brown's status as a plaintiff in a similar lawsuit in this District—standing alone—makes him an inadequate representative in this case.  On the contrary, Plaintiffs have been actively involved thus far in the litigation—Plaintiff Gawarecki signed the verified complaint and has been deposed, (see id., Ex. A), Plaintiff Brown submitted an affidavit in which he declares his commitment to the litigation, (Decl. of Thomas J. Lyons [Doc. No. 69] ("Lyons Sr. Decl."), Ex. 5 ¶¶ 5–7), and both Plaintiffs have participated in settlement conferences, (see, e.g., Doc. Nos. 28, 57).

Defendants do not dispute the qualifications of Plaintiffs' counsel.  Plaintiffs' motion papers list their counsel as Thomas J. Lyons, Sr. of the Lyons Law Firm, P.A.; Thomas J. Lyons, Jr. of the Consumer Justice Center, P.A.; and Curtis P. Zaun. According to the declarations of Plaintiffs' counsel, the Lyons Law Firm and Consumer Justice Center are "devoted to consumer rights litigation," and Mr. Lyons, Sr. and Mr. Lyons, Jr. have been certified to represent consumers in multiple class actions.  (Lyons Sr. Decl. ¶¶ 5–7 & Ex. 4; Decl. of Thomas J. Lyons, Jr. [Doc. No. 68] ¶¶ 2–4 & Ex. 1.) And, all three of Plaintiffs' attorneys have participated in settlement conferences in this

case.  (See Doc. Nos. 28, 32, 38, 57.)  Accordingly, the Court finds that Plaintiffs and

their attorneys are adequate class representatives under Rule 23(a)(4).

**C.     Rule 23(b)(3)**

Plaintiffs seek class certification under Rule 23(b)(3).  Under that provision, a

class action is proper if:

> the court finds that the questions of law or fact common to class members
> predominate over any questions affecting only individual members, and
> that a class action is superior to other available methods for fairly and
> efficiently adjudicating the controversy.  The matters pertinent to these
> findings include:
>
> (A)     the class members' interests in individually controlling the
>         prosecution or defense of separate actions;
>
> (B)     the extent and nature of any litigation concerning the controversy
>         already begun by or against class members;
>
> (C)     the desirability or undesirability of concentrating the litigation of the
>         claims in the particular forum; and
>
> (D)     the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  Defendant argues that Plaintiffs cannot demonstrate either

"predominance" or "superiority."

**1.     Predominance**

Defendant argues that there are four individualized inquiries that destroy

predominance in this case:  (1) whether each class member is a "consumer," (2) whether

a class member has actual damages, (3) whether a class member used the ATM at a time

when there was no on-machine notice, and (4) whether Defendant's statutory defenses

apply to a particular class member's transaction.  (See Def.'s Class Cert. Opp. at 20.)

Plaintiffs contend that each of these issues is either irrelevant or can be resolved by common evidence in a class setting.  (See Pls.' Reply at 9.)

The Court, for the most part, agrees with Plaintiffs.  First, whether a transaction was made by a "consumer" relates to identification of the class members and is discussed below, in regard to "superiority."  Second, as discussed numerous times herein, Defendant has demonstrated that the class members in this case do not have a claim for actual damages.  Third, the determination of the time period in which Defendant was, or was not, in compliance with the EFTA notice provision applies to the entire class and so will be made by common evidence.  See, e.g., Christy v. Heritage Bank, No. 3:10-cv-0874, 2013 WL 6858008, at *7 (M.D. Tenn. Nov. 8, 2013) ("If [the named plaintiff's] evidence allows a reasonable juror to conclude the notice was not affixed for a particular period, every class member who used the ATM during that time is entitled to an inference that the notice was absent."); Frey, 2013 U.S. Dist. LEXIS 37153, at *19 ("Although [the named plaintiff] must prove the period of time that the external fee notice was absent, each proposed class member need not affirmatively prove that the fee notice was absent when the class member used the ATM. . . . Thus, the period in which the sign was absent is a common issue of fact, and whether the notice was absent on any particular day is not an individualized inquiry defeating predominance.").  Finally, and similarly, whether Defendant can avail itself of one of the statutory defenses to liability—e.g., that Defendant posted a notice that was removed by a third party or that the violation was an unintentional error, see 15 U.S.C. §§ 1693h(d), 1693m(c)—for any given time period will affect the entire class and so depends upon evidence that will be common to all class

29

members.  See, e.g., Christy, 2013 WL 6858008, at *7 (stating that "any statutory defense

[the defendant] raises will depend on common issues"); Frey, 2013 U.S. Dist. LEXIS

37153, at *18 (stating that "[the defendant] can use common proof to establish its lack of

liability if, for instance, it proves that it had a procedure in place to ensure compliance but

failed to comply due to a bona fide error"); Flores v. Diamond Bank, No. 07 C 6403,

2008 WL 4861511, at *3 (N.D. Ill. Nov. 7, 2008) (finding that the statutory defense of

unintentional error "poses a question common to all class members").  Accordingly,

Defendant has not identified any individualized inquiries sufficient to defeat the

predominance of the common questions discussed herein.[11]

## 2. Superiority

Defendant raises two arguments regarding superiority.  First, Defendant argues

that a class action is not a superior method of handling these claims because class

members would likely recover more money through individual actions.  (See Def.'s Class

Cert. Opp. at 21.)  Specifically, Defendant argues that there is no minimum award in a

---

[11]    At oral argument on this matter, Defendant also argued that there may be a statute of limitations issue with regard to the putative class members.  A lawsuit may be brought under the EFTA "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1693m(g).  Defendant asserts that the filing of the motion for class certification determines the tolling of the statute of limitations for the putative class members.  However, there were two motions for class certification, and an intervening stay, in this case.  Because this issue was not briefed, the Court will not address the merits of the statute of limitations argument except to the extent that the potential availability of such a defense could affect its determination under Rule 23.  As with the issue of liability and the availability of statutory defenses discussed above, the Court finds that whether the statute of limitations has been tolled as to certain putative class members is a question that will depend upon evidence common to all class members—i.e., the date at which the statute of limitations began to run.  Therefore, the existence of this potential defense does not render class certification inappropriate.

class action (while there is a minimum award of statutory damages of $100 in an individual action), and that the statutory cap on liability would be $10,000 in this case (which, if there are one thousand members, would amount to approximately $10 per member, as opposed to a $1,000-cap in an individual action).  (See id.)  According to Defendant, there is no reason to certify a class where the award will be de minimus.  (See id. at 21–22.)  Plaintiffs, on the other hand, argue that other policy concerns outweigh any concern about the size of the class members' potential recovery, and that class members may opt out of the class if they want to pursue an individual action.  (See Pls.' Class Cert. Mem. at 14–17; Pl.'s Reply at 11–13.)

The Seventh Circuit recently addressed this issue in Hughes v. Kore of Indiana Enterprise, Inc., 731 F.3d 672 (7th Cir. 2013).  In that EFTA case, the district court decertified the class, in part because it determined that the class members could recover more money in individual lawsuits.  Id. at 675.  The Seventh Circuit, however, found that the $100 to $1,000 statutory damages range for individual actions is per lawsuit, rather than per transaction, and, therefore, renders individual lawsuits unrealistic.  Id. (citing 15 U.S.C. § 1693m(a)(2)(A)).  The Seventh Circuit ultimately reversed the district court and explained that:

> The smaller the stakes to each victim of unlawful conduct, the greater the economies of class action treatment and the likelier that the class members will receive some money rather than (without a class action) probably nothing, given the difficulty of interesting a lawyer in handling a suit for such modest statutory damages as provided for in the [EFTA].

Id.  Similarly, the district court in Frey v. First National Bank Southwest noted that any individual interest in a guaranteed $100 recovery "is minimal" because "[i]t assumes that

a potential individual plaintiff is aware of his or her rights, is willing to undertake to the burdens of litigation, and that the plaintiff is able to find an attorney willing to take the case." 2013 U.S. Dist. LEXIS 37153, at *21 (citing Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997)).  This Court is persuaded by the reasoning in Hughes and Frey and finds that the putative class members' interests, if any, in individually controlling separate actions does not defeat superiority in this case.[12]  Moreover, a class member who wishes to control his or her own action may choose to opt out of the class. See Fed. R. Civ. P. 23(c)(2)(B)(v).

Second, Defendant asserts that there would be numerous difficulties in managing this case as a class action.  (See Def.'s Class Cert. Opp. at 21.)  In particular, Defendant argues that it will be difficult to identify and notify the class members and to determine whether they are "consumers."  (See id. at 20, 22.)  Defendant does not have access to the names and addresses of the ATM users and would have to seek that information from the party that processes the ATM transactions and the users' financial institutions, possibly through subpoenas.  (See id. at 22.)  Plaintiffs, on the other hand, assert that the ATM generates sufficient information to allow for identification of the users, and that

---

[12]     While the court in Brown reached the opposite conclusion, it relied in part on the reasoning applied by the district court in Hughes.  See 2013 WL 6851068, at *6. However, as discussed above, the district court's reasoning in Hughes was ultimately rejected by the Seventh Circuit.  Similarly, another court within this District determined in Nadeau v. Wells Fargo Bank, N.A. that individuals who were aggrieved by a lack of notice on the ATM at issue had the same incentive to bring a lawsuit as the plaintiff in that case, and that the possibility of a de minimus statutory damages award weighed against class certification.  Civ. No. 10-4356 (PAM/JSM), 2011 WL 1633131, at *5 (D. Minn. Apr. 26, 2011).  That decision, too, was issued prior to the Seventh Circuit's ruling in Hughes.

Defendant's speculation that the users' financial institutions will not cooperate is insufficient to defeat class certification.  (Pls.' Reply at 13–15.)  In the alternative, Plaintiff proposes giving notice by print publication and posting at the ATM.  (Id. at 15–16; see Pls.' Class Cert. Mem. at 18–19.)

For a class certified under Rule 23(b)(3), "the [C]ourt must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Many courts have addressed the notice issue in EFTA cases.  While some courts have determined that the process by which identification of class members must be made defeats superiority, many other courts have found that notification can be made through reasonable effort either on an individual basis or by publication.  See, e.g., Hughes, 731 F.3d at 677 (finding that notice posted on the ATMs at issue, published in a principal newspaper, and posted on a website, was "adequate" in a case involving more than 2,800 transactions); Frey, 2013 U.S. Dist. LEXIS 37153, at *15–16, *22–23 (finding that notification of the approximately 1,500 class members by using the ATM records and contacting the banks was a "straightforward process" that did not defeat superiority); Kinder v. Dearborn Fed. Sav. Bank, No. 10-12570, 2011 WL 6371184, at *3–4 (E.D. Mich. Dec. 20, 2011) (finding public notice to be sufficient in a case involving approximately 2,000 potential class members); Flores, 2008 WL 4861511, at *4 (finding that class members could be identified through use of the ATM-generated information and bank records in an EFTA case involving over 5,000 transactions).

This Court agrees with those that have found that notice can be accomplished through reasonable effort.  The personal account number ("PAN") for the user in each transaction at issue in this case is listed on Defendant's daily terminal detail results.  (See Supplemental Decl. of Thomas J. Lyons [Doc. No. 78] ¶ 3 & Ex. 1 (filed under seal).)  The bank identification number ("BIN"), which identifies the financial institution at which the user's account is located, consists of the first six digits of the PAN.  (Pls.' Reply at 14.)  Thus, the names and contact information of the class members can be obtained from their financial institutions, or the financial institutions can notify their customers of the class.  See Frey, 2013 U.S. Dist. LEXIS 37153, at *15 ("With the ATM records, [the plaintiff] may contact the banks, have the banks look up the account numbers, and ascertain the class by objective criteria."); Flores, 2008 WL 4861511, at *4 ("Each class member is identified in the [defendant's] records with a [PAN]. . . . [The defendant] can identify the bank at which the prospective class member banks, which could then use the PAN to notify their customers of the class.").  Thus, notification is a "straightforward process" that should not defeat class certification.  Frey, 2013 U.S. Dist. LEXIS 37153, at *22.  As noted by the district court in Flores v. Diamond Bank:

> If [the defendant's] logic is taken to the extreme, a class could never be certified for a violation of the EFTA where one [entity] charges, without proper notification, customers of other [entities] a fee to use its ATM.  In such cases, the violating [entity] would never have the names and addresses of prospective class members.  The logistics of notifying class members surely does not compel such an absurd result, which would serve to insulate operators of ATMs from most class litigation.

2008 WL 4861511, at *4.

Nor does the need to determine whether a transaction was made by a "consumer" defeat superiority.  The EFTA requires ATM operators to provide notice when they impose a fee on a "consumer."  15 U.S.C. § 1693b(d)(3)(A).  A "consumer" must be a "natural person," <u>id.</u> § 1693a(6), and the consumer's account must be an account that is "established primarily for personal, family, or household purposes," <u>id.</u> § 1693a(2).  <u>See</u> <u>Brown</u>, 2013 WL 6851068, at *5.  Thus, the "EFTA asks only whether an account is <u>established</u> primarily for personal use.  It does not require that the proceeds of an ATM transaction be used for personal purposes."  <u>Frey</u>, 2013 U.S. Dist. LEXIS 37153, at *17.  Accordingly, determining whether a particular transaction was conducted by a "consumer" would only involve asking the banks to identify whether an account is a personal account or a business account—a "largely administrative" task.  <u>Id.</u> at *17–18 (citation omitted).  Accordingly, the Court finds that, with a slight amendment of "persons" to "consumers" in the proposed class definition, Rule 23(b)(3) is satisfied.[13]

### D.    Class Definition

The Court finds that Plaintiffs' claims may properly be resolved in a class action and, therefore, that certification of a class is appropriate.  As discussed above, two modifications to Plaintiffs' proposed class definition are necessary.  First, the definition

---

[13]    The Court notes that its conclusion differs from that reached in <u>Brown</u> on this issue.  In that case, the district court found that, while limiting the proposed class definition to "consumers" would "nominally cure the deficiency," the labor-intensive process of having the financial institutions identify the type of account that was used and then asking the users for what purposes the account was used, failed to satisfy Rule 23(b)(3).  2013 WL 6851068, at *5.  As discussed above, the EFTA requires only that the account be "established" for non-business purposes.  Therefore, this Court respectfully disagrees with the reasoning in <u>Brown</u> and finds that limiting the proposed class

must be amended to reflect Defendant's uncontroverted evidence that an on-machine notice was affixed to the ATM on July 8, 2011.  Thus, the class period must be narrowed to: "between July 14, 2010 and July 8, 2011."  Second, the reference to "[a]ll persons" could include individuals who engaged in transactions using an account that was established for business purposes, rather than for personal purposes.  Therefore, the definition must be modified to refer to "all consumers."

Accordingly, the Court certifies the following class:

> All consumers who were assessed a fee for using Defendant's ATM located on the first (ground) floor of 700 Hennepin Avenue, Minneapolis, Minnesota 55403 between July 14, 2010 and July 8, 2011.

The Court finds that, at this stage of the litigation, the class members are ascertainable based on objective criteria.  However, an order granting class certification "may be altered or amended before final judgment."  Fed. R. Civ. P. 23(c)(1)(C).  Therefore, should it become apparent upon completion of discovery (or at some other time prior to judgment) that the class definition requires amendments in addition to those provided for herein, the Court may revisit the issue.

## V.   ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1.   Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, Failure to State a Claim [Doc. No. 59] is **DENIED**.

2.   Plaintiffs' Motion for Class Certification [Doc. No. 64] is **GRANTED**.

---

definition to "consumers" sufficiently cures the deficiency.

3.      The Court certifies the following class:

All consumers who were assessed a fee for using Defendant's ATM located on the first (ground) floor of 700 Hennepin Avenue, Minneapolis, Minnesota 55403 between July 14, 2010 and July 8, 2011.

4.      This class is certified with respect to all claims for statutory damages for violation of 15 U.S.C. § 1693b(d)(3)(B) and its implementing regulations.

5.      Within fourteen (14) days of the date of this Order, the parties shall submit a joint proposed notice to the Court.  If the parties are unable to agree on the content of the notice, the parties shall each submit a proposed notice, together with briefing not to exceed ten (10) pages per side, within twenty-one (21) days of the date of this Order.

6.      The named Plaintiffs are appointed as class representatives.

7.      Plaintiffs' counsel, Thomas J. Lyons, Sr. of the Lyons Law Firm, P.A.; Thomas J. Lyons, Jr. of the Consumer Justice Center, P.A.; and Curtis P. Zaun, are appointed as class counsel.

Dated:  June 10, 2014                          s/Susan Richard Nelson
                                               SUSAN RICHARD NELSON
                                               United States District Judge